## Powell *against* Shank.

An amicable action was instituted before a justice of the peace for a sum exceeding 100 dollars, and was submitted to referees, who awarded 300 dollars in favour of the plaintiff. In lieu of the award the parties made a compromise for 240 dollars, for which sum judgment was entered by the justice by mutual consent. *Held,* that the judgment, thus entered, was a bar to a subsequent action brought for the same subject matter.

WRIT of error to the common pleas of *Alleghany* county.

The record of the proceedings in the court below exhibits in this case an action of debt, brought by Christian Shank for the use of John Klingensmith, against Peter Parchment, Joseph Little and Mary Little his wife, late Mary Powell, administrators of Myers Powell deceased, upon seven single bills, dated the 26th of March 1813, and executed by Myers Powell in his lifetime, and a certain Joseph Long; by each of which, except the seventh (which was for 50 dollars), the said Powell and Long jointly and severally obligated themselves to pay Christian Shank or order the sum of 100 dollars, at four, eight, twelve, sixteen, twenty, twenty-four and twenty-six months after date. The said bills having been lost or mislaid, secondary evidence was admitted at the trial, without exception, to prove their contents. The bills were assigned on the 23d of May 1815 by Shank to one John Hoover, who subsequently made an assignment of the whole claim arising under them to John Klingensmith.

The defendants below, under the plea of payment, with leave, &c. gave in evidence a transcript of certain proceedings before James Horner, Esq., a justice of the peace, as follows.

"Christian Shank for use of John Hoover *v.* Peter Parchment and Mary Powell, administrators of Myers Powell. Amicable demand, wagon, horses, &c. Parties appear and agree to refer. Joseph Welsh, Robert Alexander and David Black chosen referees, to meet at the house of William Steel on the 15th instant. September 1821, referees met, and do award in favour of plaintiff the sum of 300 dollars. Peter Parchment, one of the administrators, agrees to abide by the award, and confessed judgment for 240 dollars in full of 300 dollars, which plaintiff accepts of, September 15th, 1821. Judgment for plaintiff for the said 240 dollars. Judgment for plaintiff, Decem-

ber 30th, 1822.    *Certiorari* issued January 15th, 1823.    Execution returned."

Upon the judgment thus entered, a *scire facias* for revival was issued by the justice on the 16th of December 1822, and upon the judgment entered in pursuance, an execution was issued on the 9th of January 1823.    The judgment was taken up by transcript to the common pleas, and was also assigned by Hoover to Klingensmith.

The following receipt, to which there is no date, but which seems to have been connected with the first proceedings before Justice Hoover, was produced in evidence at the trial and relied upon by both parties to the present suit.

" Be it known that I, Peter Parchment, administrator of Myers Powell, have this day received of John Hoover, seven notes for 650 dollars, given by Myers Powell to Christian Shank, and assigned to John Hoover.    It appears by an article of agreement between said Powell and Shank, that in consequence of Powell giving his note for the above sum of 650 dollars, said Shank to said Powell or his order at Summerveal, one horse worth 100 dollars, and a good road wagon, which we think has not been complied with.    Therefore as soon as it is made appear that the said horse and wagon has been delivered agreeable to contract, I will pay to the said John Hoover the sum of 240 dollars.

"PETER PARCHMENT.

"Test—J. Horner."

To repel the effect of the evidence offered by the defendants below in bar of the action, the plaintiff below gave in evidence a variety of testimony, for the purpose of proving that collusion was practised by the administrators of Powell and others upon John Hoover, at the time the above proceedings were had before the justice, in order to deprive Hoover of the single bills.    The plaintiff below also produced the record of a *certiorari*, issued out of the court of common pleas of Alleghany county, at the instance of John Little, one of the said administrators, with the affidavit, required by law, annexed to the same.    The *certiorari* was directed to the said James Horner, esquire, commanding him to produce the record of the proceedings in the above suit before him.    The *certiorari* still remains undisposed of in the common pleas.

The counsel of the defendants below submitted, among other points which are not material, the following :

That the judgment given in evidence in this case is now in full force, and is a complete bar to the action.

Upon this point the court below refused to charge as requested, but instructed the jury that the judgment so given in evidence was not in full force, nor a bar to the action of the plaintiff ; and that the receipt was no confirmation of the same.

Error was assigned to this charge of the court below.

*Burke,* for plaintiffs in error.

[Powell v. Shank.]

The consideration of the notes was a wagon and five horses, sold in 1813 by Christian Shank to one Long, who gave Myers Powell as security for the payment of the notes. We asked the court to charge, that the former judgment which we produced in evidence was a bar. We considered and put it in the light of a judgment confessed. It was objected that the justice exceeded his jurisdiction. But the judgment was transferred to the common pleas, and there docketed. Although it may have been erroneous in the first instance for want of jurisdiction in the justice, it became a valid judgment in the common pleas. Hinds *v.* Willis, 13 *Serg. & Rawle* 213; Walker *v.* Lyon, 3 *Penns. Rep.* 98.

*Watts,* for defendant in error.

We contend that this case fell not within the scope of the powers conferred upon justices of the peace by the act of assembly. The transcript exhibits the entry of an amicable action. The amount due, being contested, it was referred to three arbitrators, who awarded the sum of 300 dollars in favour of the plaintiff. Thus far, it is clear there was excess of jurisdiction. Can then the subsequent remodification of the proceedings clothe the magistrate with power he did not originally possess? To be sure his docket reports a confession of a judgment by one of the administrators for a sum less than the award of the referees, and a kind of half acquiescence in the same by the plaintiff; but which was ultimately disturbed by the co-administrator, who swore that the proceedings were unjust and illegal, and issued a *certiorari* to reverse the same. What the defendants themselves, therefore, have treated before the magistrate as *unjust* and *illegal,* they now seek, for a different purpose, to establish as *the voluntary and unexceptionable confession of a judgment* before a tribunal having competent authority. Can this be done? When both parties have regarded the proceedings as a *nullity,* and they can only be regarded as having a spark of vitality upon the supposition of a *mutual acquiescence,* will the court say that the record of the justice, accompanied by the subsequent proceedings, forms a barrier to the recovery of the plaintiffs in this cause which they cannot surmount? Brenneman *v.* Greenawalt, 1 *Serg. & Rawle* 27; M'Killip *v.* M'Killip, 2 *Ibid.* 489; Moore *v.* Wait, 1 *Binn.* 219; Laird *v.* M'Conachy, 3 *Serg. & Rawle* 291; Geyger *v.* Story, 1 *Dall.* 135, 5 *Johns.* 37; Hines *v.* Willis, 13 *Serg. & Rawle* 214; Walker *v.* Lyon, 3 *Penns. Rep.* 98.

PER CURIAM.—The charge could be sustained only by showing the judgment of the justice to be void for excess of jurisdiction. The parties went voluntarily before him, and had they submitted the matter to his own decision instead of that of arbitrators, or had the defendants confessed judgment, it is conceded that all would have been within the pale of his authority. By the amicable institution of the action, the parties were regularly before him, and he

[Powell v. Shank.]

had acquired jurisdiction in the first instance ; so that it might admit of a question, were it necessary, whether a jurisdiction thus regularly acquired could be ousted by a subsequent irregularity in submitting the cause to arbitrators, or whether by such submission it were withdrawn from the jurisdiction of the justice.    But though there was actually an award, it was relinquished, and the cause subsequently compromised by an agreement for a less sum, for which the justice gave judgment with the assent of all parties.    By this compromise the cause was restored to its original footing ; and the judgment pursuant to it, being substantially by confession, was within the letter of the act, and a bar to a subsequent action.

Judgment reversed, and a *venire de novo* awarded.